MAURICE WAINER (State Bar No. 121678)
SNIPPER, WAINER & MARKOFF
270 N. Canon Drive, Penthouse
Beverly Hills, CA 90210
TELEPHONE: (310) 550-5770 ♦ FACSIMILE: (310) 550-6770
EMAIL: mrwainer@aol.com

Attorneys for Plaintiff FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for INDYMAC BANK, F.S.B.

FILED
2010 JAN -7 PM 3:25
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for INDYMAC BANK, F.S.B.,

Plaintiff,

vs.

IMORTGAGE.COM, INC., a Delaware corporation,

Defendants.

Case No. CV10 0114 DSF (MANx)

**COMPLAINT FOR:**

1. **BREACH OF CONTRACT**
2. **NEGLIGENCE**
3. **SPECIFIC PERFORMANCE**

Plaintiff FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for INDYMAC BANK, F.S.B., herein for claims against defendant alleges as follows:

**COMMON ALLEGATIONS**

**PARTIES**

1. Plaintiff FEDERAL DEPOSIT INSURANCE CORPORATION ("FDIC") is a government entity appointed by the Office of Thrift Supervision to act as Receiver for INDYMAC BANK, F.S.B ("INDYMAC") pursuant to 12 U.S.C. 1821(d)(2)(B).

2. INDYMAC was a FDIC-insured financial institution which was authorized to do business in the State of California and in the County of Los Angeles, among other counties.

3. The FDIC and INDYMAC BANK, F.S.B. shall collectively be referred to herein as "FDIC/INDYMAC."

4. FDIC/INDYMAC is informed and believes and thereon alleges that defendant IMORTGAGE.COM, INC. ("IMORTGAGE" or "Defendant") is a Delaware corporation with its principal place of business in Scottsdale, Arizona. FDIC/INDYMAC is further informed and believes and thereon alleges that at the time of the subject transactions, IMORTGAGE was a licensed mortgage banker doing business in the State of California and was engaged in the business of processing, packaging, selling and/or servicing loans secured by real property.

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

**JURISDICTION AND VENUE**

5. This Court has original jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331 since all suits to which the FDIC is a party are deemed to arise under the law of the United States. (12 U.S.C. §1819(b)(2)(A).)

6. Venue is proper in the Central District of California, pursuant to 28 U.S.C. § 1391, in that the "Agreement" between FDIC/INDYMAC and IMORTGAGE, as well as the "Guide," both described more fully below and which form the subject matter of this Complaint, expressly provide that Defendant consents to the exclusive jurisdiction of the state and federal courts located in the County of Los Angeles, State of California. These mutually agreed-upon forum selection provisions are valid and enforceable and, for that reason, among others, this action is properly before this Court. In addition, the place of performance for all or some of the obligations sued upon was in the County of Los Angeles. IMORTGAGE is subject to personal jurisdiction in this district at the time the action is commenced and has sufficient minimum contacts with the County of Los Angeles.

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

## THE AGREEMENT

7. On or about March 6, 2003, INDYMAC and IMORTGAGE entered into a business relationship governed by a written Seller Contract and e-MITS™ User Agreement (hereinafter "Agreement"). The Agreement sets forth terms and conditions, pursuant to which FDIC/INDYMAC would purchase and/or fund loans (the "Loans") processed, packaged and submitted by IMORTGAGE. The Agreement provides that these Loans must satisfy specified criteria, in accordance with FDIC/INDYMAC's underwriting requirements, all as more fully set forth in the Agreement. A true and correct copy of the Agreement is attached hereto as Exhibit "A" and incorporated by this reference.

8. The Agreement provides the following:

> . . . Seller [IMORTGAGE] desires to do one or more of the following: (1) sell mortgage loans to Company [INDYMAC], (2) service mortgage loans for Company, and/or (3) submit mortgage loans to Company for table funding . . . in each case pursuant to the terms of this Contract, the IndyMac Seller Guide, as amended, supplemented or otherwise modified from time to time (the "Seller Guide"), and the e-MITS User Guide (the "e-MITS Guide") (the Seller Guide and the e-MITS Guide are collectively referred to as the "Guide") and any master commitments entered into between Seller and Company.
>
> . . .
>
> 1. Seller's Duties. Seller shall diligently perform all duties incident to the sale, servicing and/or table funding, as applicable, of all mortgage loans which may be sold by Seller to, serviced by Seller for, and/or delivered by Seller for table-funding by Company from time to time and such other mortgage loans as Company and Seller may mutually agree upon. In the performance of such duties, Seller shall comply with all of the applicable provisions

> of the Guide and with all other reasonable requirements and instructions of Company. . . .

## THE "SELLER GUIDE"

9. The Agreement states:

> 2. Incorporation of Guide by Reference. SELLER ACKNOWLEDGES THAT IT HAS READ THE GUIDE PRIOR TO ENTERING INTO THIS CONTRACT and has the ability to sell, service and/or facilitate (as the case may be) the table funding of mortgage loans in accordance with the Guide. Seller hereby agrees to perform all of the obligations of a seller, and to comply with the terms, conditions, procedures and requirements set forth in the Guide, all of the terms and conditions of which are incorporated herein by reference and made a part of this Contract.

A copy of the Guide was in the possession of, or available to, IMORTGAGE at all relevant times.

10. Unless otherwise noted, the Seller Guide and the e-MITS™ Guide shall be referred to collectively hereinafter as the "Guide."

11. Unless otherwise noted, the terms "Seller" and "Customer" and "Seller/Customer" may be used interchangeably below, and all three terms shall refer to IMORTGAGE.

12. The Seller Guide and the e-MITS™ Guide are each amended and updated from time to time pursuant to a standard procedure provided therein, whereby each Seller receives a bulletin and notice of such changes on a regular basis. The changes are binding upon the Seller pursuant to the terms of the Guide and the Agreement, unless the Seller provides notice of termination of the Agreement prior to the effective date of such changes.

13. The Agreement provides as follows regarding repurchase

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

obligations:

> 8.  Repurchase Obligations.  Seller shall promptly effectuate any repurchase of a mortgage loan required by Company in accordance with the terms and conditions of the Guide.

14.   The Agreement provides the following with regard to indemnification:

> 15.  Indemnification by Seller.  Seller shall promptly indemnify, defend and hold Company [INDYMAC] from and against all losses, claims, demands, actions or causes of action, liabilities, damages, penalties, fines, forfeitures, judgments, legal fees, including attorneys' fees actually incurred, and any other costs and expenses heretofore or hereafter resulting from, arising out of, relating to, or in connection with (i) a breach of any representation, warranty or obligation of Seller contained in or made pursuant to this Contract or the Guide, or (ii) any act or omission by Seller under this Contract or the Guide, or (iii) any claim, demand, defense or assertion against or involving Company, including without limitation, from Company's assignee or transferee, with respect to any mortgage loan, based on or grounded upon, or resulting from any such breach by Seller or a breach of any representation, warranty or obligation made by Company in reliance upon any representation, warranty or obligation made or undertaken by Seller contained in or pursuant to this Contract or the Guide. . . . .

15.   The Guide provides that the Seller represents and warrants to FDIC/INDYMAC as follows with respect to each Loan delivered to FDIC/INDYMAC as of the date of purchase of the Loan by FDIC/INDYMAC:

**1220 Representations and Warranties Regarding Loans**

* * *

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770   FAX (310) 550-6770

**General Loan Eligibility**

Following are the general loan eligibility representations and warranties:

(a) The Loan conforms in all respects to the requirements of this Guide, and the information set forth in each Loan Document delivered by the Seller conforms in all respects to the requirements of the Guide and is true, complete and accurate, and no material fact about the Loan has been misstated or omitted.

(b) There are no circumstances or conditions with respect to the Security Instrument, the Subject Property, the Mortgagor, the Mortgagor's credit standing or the origination of the Loan that could cause private institutional investors who invest in loans with similar loan program parameters to regard the Loan as an unacceptable investment, cause the Loan to become Delinquent or adversely affect the value or marketability of the Loan.

16. Section 1250 of the Guide states as follows:

**1250 Loan Information**

**Credit and Property Underwriting**

The Seller shall be responsible for all credit and property underwriting regardless of whether the information was documented by the Seller, any organization related to the Seller, or any organization selected by the Seller. This includes, but is not limited to, appraisals, Borrower credit information and all other documents used to assess each Loan. The Seller represents and warrants that all Loans sold to the Company have been prudently originated and underwritten in accordance with the Company's origination and underwriting guidelines set forth in this Guide. In addition, the Seller represents and warrants that all of the information included in the Loan Documents concerning the Mortgagor is true, complete and accurate . . . .

17. Section 2110 of the Guide sets forth the requirement that the property be owner occupied.

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

18. The Agreement provides in relevant part the following with regard to representations and warranties:

> 5. Warranties, Representations and Obligation. Seller reaffirms that the representations and warranties stated in the Guide are true and correct and agrees to undertake all of the obligations stated in the Guide upon the execution of this Contract and upon the sale of each mortgage loan to Company . . . .

**SUBMISSION OF LOANS TO FDIC/INDYMAC**

19. Pursuant to the provisions contained in the Agreement and subject to the terms and conditions of the Guide, IMORTGAGE processed, packaged and submitted the Loans to FDIC/INDYMAC for origination that form the subject matter of this Complaint.

**PERFORMANCE BY FDIC/INDYMAC**

20. FDIC/INDYMAC has performed all of its obligations to IMORTGAGE under and in accordance with the Agreement and the Guide, except any obligations INDYMAC has been prevented or excused from performing by the acts and breaches of IMORTGAGE.

///

**IMORTGAGE'S REPURCHASE AND INDEMNIFICATION OBLIGATIONS**

21. The Loans submitted by IMORTGAGE to FDIC/INDYMAC failed to meet the documentation requirements of, or otherwise failed to comply with, the terms and conditions of the Agreement and the Guide governing the submission of the Loans. The failures constitute violations of the representations and warranties by IMORTGAGE to FDIC/INDYMAC in the Agreement and the Guide, as more fully set forth below.

22. On various occasions, FDIC/INDYMAC demanded that

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

IMORTGAGE perform its repurchase and/or indemnification obligations under the Agreement and the Guide, with regard to the Loans at issue herein and as more fully described below. IMORTGAGE failed and refused to perform those obligations, despite having agreed and committed to do so as a condition of FDIC/INDYMAC's willingness to originate the Loans.

23. The Agreement and the Guide provide that Seller indemnify, defend and hold Company harmless from and against all legal fees, costs and expenses resulting from, arising out of, relating to, or in connection with a breach of any representation, warranty or obligation of Seller contained in or made pursuant to the Agreement and the Guide.

**FIRST CLAIM FOR RELIEF**

**(BREACH OF CONTRACT)**

24. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

25. On or about March 23, 2007, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC a loan to Gabriel Medina (loan no. 125398051) in the principal amount of $52,950, which loan was secured by real property located at 847 South 222nd Ave., Buckeye, AZ 85326 (the "MEDINA LOAN").

26. In submitting the MEDINA LOAN to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that the borrower's employment was misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the MEDINA LOAN and /or indemnify FDIC/INDYMAC for its losses arising from the MEDINA LOAN.

27. Commencing on or about August 18, 2009, FDIC/INDYMAC demanded that IMORTGAGE repurchase the MEDINA LOAN in accordance with

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

28. IMORTGAGE failed and refused to repurchase the MEDINA LOAN and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the MEDINA LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the MEDINA LOAN.

29. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the MEDINA LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the MEDINA LOAN, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $61,977.98 plus interest, attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**

**(BREACH OF CONTRACT)**

30. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

31. On or about March 23, 2007, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC a loan to Anh M. Tran (loan no. 125543036) in the principal amount of $97,000, which loan was secured by real property located at 9007 Neponset Drive, Elk Grove, CA 95624 (the "A. TRAN LOAN").

32. In submitting the A. TRAN LOAN to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that (1) the borrower's

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

income was misrepresented and (2) the transaction was misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the A. TRAN LOAN and /or indemnify FDIC/INDYMAC for its losses arising from the A. TRAN LOAN.

33. Commencing on or about August 18, 2009, FDIC/INDYMAC demanded that IMORTGAGE repurchase the A. TRAN LOAN in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

34. IMORTGAGE failed and refused to repurchase the A. TRAN LOAN and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the A. TRAN LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the A. TRAN LOAN.

35. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the A. TRAN LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the A. TRAN LOAN, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $96,113.08 plus interest, attorneys' fees and costs.

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

**THIRD CLAIM FOR RELIEF**

**(BREACH OF CONTRACT)**

36. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

37. On or about April 12, 2007, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC a loan to Larry Berna

Donelan (loan no. 125626403) in the principal amount of $94,414, which loan was secured by real property located at 40008 Annapolis Drive, Temecula, CA 92591 (the "DONELAN LOAN").

38. In submitting the DONELAN LOAN to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that occupancy was misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the DONELAN LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the DONELAN LOAN.

39. Commencing on or about August 18, 2009, FDIC/INDYMAC demanded that IMORTGAGE repurchase the DONELAN LOAN in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

40. IMORTGAGE failed and refused to repurchase the DONELAN LOAN and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the DONELAN LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the DONELAN LOAN.

41. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the DONELAN LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the DONELAN LOAN, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $104,358.26, plus interest, attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

**(BREACH OF CONTRACT)**

42.     FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

43.     On or about April 9, 2007 pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC two loans to Lauren Bradshaw (loan nos. 125776909 and 125776910) in the principal amounts of $718,580 and $179,640, respectively, which loans were secured by real property located at 12618 Dupont Drive, Rancho Cucamonga, CA 91739 (the "BRADSHAW LOANS").

44.     In submitting the BRADSHAW LOANS to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that (1) the borrower's income was misrepresented and (2) the occupancy was misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the BRADSHAW LOANS and/or indemnify FDIC/INDYMAC for its losses arising from the BRADSHAW LOANS.

45.     Commencing on or about August 18, 2009, with respect to loan no. 125776909, and on or about November 20, 2009, with respect to loan no. 125776910, FDIC/INDYMAC demanded that IMORTGAGE repurchase the BRADSHAW LOANS in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

46.     IMORTGAGE failed and refused to repurchase the BRADSHAW LOANS and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the BRADSHAW LOANS and/or indemnify FDIC/INDYMAC for its losses arising from the BRADSHAW LOANS.

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

47. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the BRADSHAW LOANS and/or indemnify FDIC/INDYMAC for its losses arising from the BRADSHAW LOANS, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $429,174.10, plus interest, attorneys' fees and costs.

**FIFTH CLAIM FOR RELIEF**

**(BREACH OF CONTRACT)**

48. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

49. On or about April 25, 2007, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC a loan to Kenneth M. Leib (loan no. 125853483) in the principal amount of $62,200, which loan was secured by real property located at 20620 W Walton Drive, Buckeye, AZ 85396 (the "LEIB LOAN").

50. In submitting the LEIB LOAN to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that the borrower's employment was misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the LEIB LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the LEIB LOAN.

51. Commencing on or about August 18, 2009, FDIC/INDYMAC demanded that IMORTGAGE repurchase the LEIB LOAN in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

52. IMORTGAGE failed and refused to repurchase the LEIB LOAN

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the LEIB LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the LEIB LOAN.

53. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the LEIB LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the LEIB LOAN, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $61,796.29, plus interest, attorneys' fees and costs.

**SIXTH CLAIM FOR RELIEF**

**(BREACH OF CONTRACT)**

54. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

55. On or about April 26, 2007, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC a loan to Erick G. Mejia (loan no. 125951642) in the principal amount of $59,650, which loan was secured by real property located at 10330 Cavern Hills Dr., Las Vegas, NV 89178 (the "MEJIA LOAN").

56. In submitting the MEJIA LOAN to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that the borrower's income was misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the MEJIA LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the MEJIA LOAN.

57. Commencing on or about August 18, 2009, FDIC/INDYMAC

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

demanded that IMORTGAGE repurchase the MEJIA LOAN in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

58. IMORTGAGE failed and refused to repurchase the MEJIA LOAN and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the MEJIA LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the MEJIA LOAN.

59. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the MEJIA LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the MEJIA LOAN, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $59,150.26, plus interest, attorneys' fees and costs.

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

## SEVENTH CLAIM FOR RELIEF

## (BREACH OF CONTRACT)

60. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

61. On or about August 3, 2007, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC a loan to Jane R. Barrios (loan no. 126990151) in the principal amount of $448,300, which loan was secured by real property located at 16096 Begonia Ave., Chino, CA 91710 (the "BARRIOS LOAN").

62. In submitting the BARRIOS LOAN to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that the borrower's

income was misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the BARRIOS LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the BARRIOS LOAN.

63. Commencing on or about August 18, 2009, FDIC/INDYMAC demanded that IMORTGAGE repurchase the BARRIOS LOAN in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

64. IMORTGAGE failed and refused to repurchase the BARRIOS LOAN and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the BARRIOS LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the BARRIOS LOAN.

65. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the BARRIOS LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the BARRIOS LOAN, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $156,882.11, plus interest, attorneys' fees and costs.

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

## EIGHTH CLAIM FOR RELIEF

## (BREACH OF CONTRACT)

66. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

67. On or about August 13, 2007, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC two loan to Bhemeshwa Malepatal (loan nos. 127307458 and 127257954) in the principal

amounts of $96,800 and $387,200, respectively, which loans were secured by real property located at 16084 Begonia Ave., Chino, CA 91710 (collectively, the "MALEPATAL LOANS").

68. In submitting the MALEPATAL LOANS to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that (1) the borrower's income was misrepresented and (2) the borrower's employment was misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the MALEPATAL LOANS and/or indemnify FDIC/INDYMAC for its losses arising from the MALEPATAL LOANS.

69. Commencing on or about August 18, 2009, FDIC/INDYMAC demanded that IMORTGAGE repurchase the MALEPATAL LOANS in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

70. IMORTGAGE failed and refused to repurchase the MALEPATAL LOANS and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the MALEPATAL LOANS and/or indemnify FDIC/INDYMAC for its losses arising from the MALEPATAL LOANS.

71. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the MALEPATAL LOANS and/or indemnify FDIC/INDYMAC for its losses arising from the MALEPATAL LOANS, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $239,955.61, plus interest, attorneys' fees and costs.

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

## NINTH CLAIM FOR RELIEF

## (BREACH OF CONTRACT)

72. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

73. On or about July 25, 2006, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC a loan to John Manley (loan no. 123759387) in the principal amount of $220,400, which loan was secured by real property located at 1262 E. Stirrup Lane, Queen Creek, AZ 85242 (the "MANLEY LOAN").

74. In submitting the MANLEY LOAN to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that (1) the borrower's income was misrepresented, and (2) the credit was misrepresented in that there was an undisclosed mortgage. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the MANLEY LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the MANLEY LOAN.

75. Commencing on or about May 21, 2008, FDIC/INDYMAC demanded that IMORTGAGE repurchase the MANLEY LOAN in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

76. IMORTGAGE failed and refused to repurchase the MANLEY LOAN and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the MANLEY LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the MANLEY LOAN.

77. As a proximate result of IMORTGAGE's breach of contract,

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the MANLEY LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the MANLEY LOAN, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $124,277.87, plus interest, attorneys' fees and costs.

**TENTH CLAIM FOR RELIEF**

**(BREACH OF CONTRACT)**

78. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

79. On or about April 3, 2006, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC two loans to Leticia Ceja (loan nos. 123008858 and 123009528) in the principal amounts of $380,400 and $95,130, respectively, which loans were secured by real property located at 15924 Rocky Harbor Rd., Lathrop, CA 95330 (the "CEJA LOANS").

80. In submitting the CEJA LOANS to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that (1) the borrower's income was misrepresented, and (2) the CEJA LOANS were Nonconforming to Underwriting/Investor Guidelines. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the CEJA LOANS and/or indemnify FDIC/INDYMAC for its losses arising from the CEJA LOANS.

81. Commencing on or about January 9, 2008 with respect to loan no. 123008858, and October 10, 2008 with respect to loan no. 123009528, FDIC/INDYMAC demanded that IMORTGAGE repurchase the CEJA LOANS in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

82. IMORTGAGE failed and refused to repurchase the CEJA LOANS and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the CEJA LOANS and/or indemnify FDIC/INDYMAC for its losses arising from the CEJA LOANS.

83. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the CEJA LOANS and/or indemnify FDIC/INDYMAC for its losses arising from the CEJA LOANS, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $314,118.10, plus interest, attorneys' fees and costs.

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

## ELEVENTH CLAIM FOR RELIEF

## (BREACH OF CONTRACT)

84. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

85. On or about April 6, 2006, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC two loans to Mirna Nevarez (loan nos. 122504670 and 122506480) in the principal amounts of $267,150 and $66,750, respectively, which loans were secured by real property located at 337 Holsteiner Circle, San Jacinto CA 92583 (the "NEVAREZ LOANS").

86. In submitting the NEVAREZ LOANS to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that (1) the borrower's income was misrepresented, and (2) the borrower's employment was misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the NEVAREZ LOANS and/or indemnify FDIC/INDYMAC for its losses arising from

the NEVAREZ LOANS.

87. Commencing on or about December 29, 2008, FDIC/INDYMAC demanded that IMORTGAGE repurchase the NEVAREZ LOANS in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

88. IMORTGAGE failed and refused to repurchase the NEVAREZ LOANS and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the NEVAREZ LOANS and/or indemnify FDIC/INDYMAC for its losses arising from the NEVAREZ LOANS.

89. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the NEVAREZ LOANS and/or indemnify FDIC/INDYMAC for its losses arising from the NEVAREZ LOANS, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $200,145.55, plus interest, attorneys' fees and costs.

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

**TWELFTH CLAIM FOR RELIEF**

**(BREACH OF CONTRACT)**

90. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

91. On or about August 31, 2006, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC a loan to Rosario Contreras (loan no. 123957479) in the principal amount of $86,710, which loan was secured by real property located at 28515 Plymouth Way, Temecula, CA 92591 (the "CONTRERAS LOAN").

92. In submitting the CONTRERAS LOAN to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that (1) the borrower's credit was misrepresented, and (2) occupancy was misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the CONTRERAS LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the CONTRERAS LOAN.

93. Commencing on or about December 18, 2008, FDIC/INDYMAC demanded that IMORTGAGE repurchase the CONTRERAS LOAN in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

94. IMORTGAGE failed and refused to repurchase the CONTRERAS LOAN and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the CONTRERAS LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the CONTRERAS LOAN.

95. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the CONTRERAS LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the CONTRERAS LOAN, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $100,388.71, plus interest, attorneys' fees and costs.

**THIRTEENTH CLAIM FOR RELIEF**

**(BREACH OF CONTRACT)**

96. FDIC/INDYMAC realleges and incorporates herein by reference

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

paragraphs 1 through 23, inclusive, of this Complaint.

97. On or about April 24, 2006, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC a loan to Andrew Wallace (loan no. 123283435) in the principal amount of $359,300, which loan was secured by real property located at 15900 Mossy Point Way, Lathrop, CA 95330 (the "WALLACE LOAN").

98. In submitting the WALLACE LOAN to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that (1) the borrower's credit was misrepresented, and (2) employment was misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the WALLACE LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the WALLACE LOAN.

99. Commencing on or about December 9, 2008, FDIC/INDYMAC demanded that IMORTGAGE repurchase the WALLACE LOAN in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

100. IMORTGAGE failed and refused to repurchase the WALLACE LOAN and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the WALLACE LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the WALLACE LOAN.

101. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the WALLACE LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

WALLACE LOAN, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $149,539.22, plus interest, attorneys' fees and costs.

**FOURTEENTH CLAIM FOR RELIEF**

**(BREACH OF CONTRACT)**

102. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

103. On or about August 9, 2006, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC a loan to Antonius Delove (loan no. 123674268) in the principal amount of $118,400, which loan was secured by real property located at 3240 Pillsbury Road, Sacramento, CA 95691 (the "DELOVE LOAN").

104. In submitting the DELOVE LOAN to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that the borrower's income was misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the DELOVE LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the DELOVE LOAN.

105. Commencing on or about December 29, 2008, FDIC/INDYMAC demanded that IMORTGAGE repurchase the DELOVE LOAN in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

106. IMORTGAGE failed and refused to repurchase the DELOVE LOAN and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the DELOVE LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the DELOVE

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

LOAN.

107. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the DELOVE LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the DELOVE LOAN, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $126,249.54, plus interest, attorneys' fees and costs.

**FIFTEENTH CLAIM FOR RELIEF**

**(BREACH OF CONTRACT)**

108. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

109. On or about July 17, 2006, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC a loan to Ezequiel Vazquez (loan no. 123231581) in the principal amount of $76,750, which loan was secured by real property located at 1534 Leland Street, Beaumont, CA 92223 (the "VAZQUEZ LOAN").

110. In submitting the VAZQUEZ LOAN to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that the borrower's employment was misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the VAZQUEZ LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the VAZQUEZ LOAN.

111. Commencing on or about May 15, 2008, FDIC/INDYMAC demanded that IMORTGAGE repurchase the VAZQUEZ LOAN in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

112. IMORTGAGE failed and refused to repurchase the VAZQUEZ LOAN and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the VAZQUEZ LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the VAZQUEZ LOAN.

113. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the VAZQUEZ LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the VAZQUEZ LOAN, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $76,705.85, plus interest, attorneys' fees and costs.

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

**SIXTEENTH CLAIM FOR RELIEF**

**(BREACH OF CONTRACT)**

114. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

115. On or about December 19, 2006, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC a loan to Bich Tran (loan no. 124309478) in the principal amount of $82,450, which loan was secured by real property located at 221 Geraldine Way, Modesto, CA 95356 (the "B. TRAN LOAN").

116. In submitting the B. TRAN LOAN to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that (1) the borrower's income was misrepresented, and (2) the borrower's employment was misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the

B. TRAN LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the B. TRAN LOAN.

117. Commencing on or about May 15, 2008, FDIC/INDYMAC demanded that IMORTGAGE repurchase the B. TRAN LOAN in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

118. IMORTGAGE failed and refused to repurchase the B. TRAN LOAN and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the B. TRAN LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the B. TRAN LOAN.

119. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the B. TRAN LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the B. TRAN LOAN, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $94,435.83, plus interest, attorneys' fees and costs.

**SEVENTEENTH CLAIM FOR RELIEF**

**(BREACH OF CONTRACT)**

120. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

121. On or about August 10, 2006, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC a loan to Karen Martinez (loan no. 123965387) in the principal amount of $83,600, which loan was secured by real property located at 11327 E. Sheppard Avenue, Mesa, AZ

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

85212 (the "MARTINEZ LOAN").

122. In submitting the MARTINEZ LOAN to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that the borrower's income was misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the MARTINEZ LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the MARTINEZ LOAN.

123. Commencing on or about May 15, 2008, FDIC/INDYMAC demanded that IMORTGAGE repurchase the MARTINEZ LOAN in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

124. IMORTGAGE failed and refused to repurchase the MARTINEZ LOAN and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the MARTINEZ LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the MARTINEZ LOAN.

125. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the MARTINEZ LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the MARTINEZ LOAN, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $85,419.28, plus interest, attorneys' fees and costs.

**EIGHTEENTH CLAIM FOR RELIEF**

**(BREACH OF CONTRACT)**

126. FDIC/INDYMAC realleges and incorporates herein by reference

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

paragraphs 1 through 23, inclusive, of this Complaint.

127. On or about November 28, 2006, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC two loans to Abdul Sofid (loan nos. 124627245 and 124698851) in the principal amounts of $469,949 and $117,487, respectively, which loans were secured by real property located at 9278 Louis Street, Elk Grove, CA 95624 (the "SOFID LOANS").

128. In submitting the SOFID LOANS to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that (1) the borrower's income was misrepresented, (2) the borrower's credit was misrepresented, and (3) the appraisal was misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the SOFID LOANS and/or indemnify FDIC/INDYMAC for its losses arising from the SOFID LOANS.

129. Commencing on or about August 25, 2008, FDIC/INDYMAC demanded that IMORTGAGE repurchase the SOFID LOANS in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

130. IMORTGAGE failed and refused to repurchase the SOFID LOANS and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the SOFID LOANS and/or indemnify FDIC/INDYMAC for its losses arising from the SOFID LOANS.

131. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the SOFID LOANS and/or indemnify FDIC/INDYMAC for its losses arising from the SOFID

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

LOANS, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $265,733.55, plus interest, attorneys' fees and costs.

**NINETEENTH CLAIM FOR RELIEF**

**(BREACH OF CONTRACT)**

132. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

133. On or about June 30, 2006, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC a loan to Daniel Garcia (loan no. 123686467) in the principal amount of $84,700, which loan was secured by real property located at 1528 Fiddle Leaf Lane, Ceres, CA 95307 (the "GARCIA LOAN").

134. In submitting the GARCIA LOAN to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that (1) the borrower's credit was misrepresented, (2) the borrower's income was misrepresented, (3) the borrower's employment was misrepresented, and the transaction was not at arms-length. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the GARCIA LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the GARCIA LOAN.

135. Commencing on or about December 4, 2008, FDIC/INDYMAC demanded that IMORTGAGE repurchase the GARCIA LOAN in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

136. IMORTGAGE failed and refused to repurchase the GARCIA LOAN and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

failing and refusing, and continuing to fail and refuse, to repurchase the GARCIA LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the GARCIA LOAN.

137. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the GARCIA LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the GARCIA LOAN, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $90,808.78, plus interest, attorneys' fees and costs.

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

**TWENTIETH CLAIM FOR RELIEF**

**(BREACH OF CONTRACT)**

138. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

139. On or about April 12, 2007, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC a loan to Christopher Khalil (loan no. 125744070) in the principal amount of $626,850, which loan was secured by real property located at 1026 Natwick Way, Brentwood, CA 94513 (the "KHALIL LOAN").

140. In submitting the KHALIL LOAN to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that the borrower's income was misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the KHALIL LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the KHALIL LOAN.

141. Commencing on or about August 18, 2009, FDIC/INDYMAC demanded that IMORTGAGE repurchase the KHALIL LOAN in accordance with its

obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

142. IMORTGAGE failed and refused to repurchase the KHALIL LOAN and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the KHALIL LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the KHALIL LOAN.

143. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the KHALIL LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the KHALIL LOAN, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $271,175.00, plus interest, attorneys' fees and costs.

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

## TWENTY-FIRST CLAIM FOR RELIEF

## (BREACH OF CONTRACT)

144. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

145. On or about April 5, 2007, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC a loan to Michelle Ronduen (loan no. 125302162) in the principal amount of $101,441, which loan was secured by real property located at 40049 Charleston Lane, Temecula, CA 92591 (the "RONDUEN LOAN").

146. In submitting the RONDUEN LOAN to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that the borrower's

credit was misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the RONDUEN LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the RONDUEN LOAN.

147. Commencing on or about October 2, 2008, FDIC/INDYMAC demanded that IMORTGAGE repurchase the RONDUEN LOAN in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

148. IMORTGAGE failed and refused to repurchase the RONDUEN LOAN and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the RONDUEN LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the RONDUEN LOAN.

149. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the RONDUEN LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the RONDUEN LOAN, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $101,441.00, plus interest, attorneys' fees and costs.

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

**TWENTY-SECOND CLAIM FOR RELIEF**

**(BREACH OF CONTRACT)**

150. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

151. On or about December 12, 2006, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC two loans to Jimmie Chiappelli (loan nos. 124666693 and 124722738) in the principal amounts of

$220,550 and $55,140, respectively, which loans were secured by real property located at 22590 W. Lasso Lane, Buckeye, AZ 85326 (the "CHIAPPELLI LOANS").

152. In submitting the CHIAPPELLI LOANS to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that (1) the borrower's credit was misrepresented, (2) the value of the collateral property was misrepresented, and (3) the borrower's assets were misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the CHIAPPELLI LOANS and/or indemnify FDIC/INDYMAC for its losses arising from the CHIAPPELLI LOANS.

153. Commencing on or about October 13, 2008, FDIC/INDYMAC demanded that IMORTGAGE repurchase the CHIAPPELLI LOANS in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

154. IMORTGAGE failed and refused to repurchase the CHIAPPELLI LOANS and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the CHIAPPELLI LOANS and/or indemnify FDIC/INDYMAC for its losses arising from the CHIAPPELLI LOANS.

155. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the CHIAPPELLI LOANS and/or indemnify FDIC/INDYMAC for its losses arising from the CHIAPPELLI LOANS, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

$193,108.11, plus interest, attorneys' fees and costs.

**TWENTY-THIRD CLAIM FOR RELIEF**

**(BREACH OF CONTRACT)**

156. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 23, inclusive, of this Complaint.

157. On or about March 14, 2006, pursuant to the provisions contained in the Agreement, IMORTGAGE sold to FDIC/INDYMAC a loan to Jaime Bungay (loan no. 122771471) in the principal amount of $69,600, which loan was secured by real property located at 209 Holsteiner Circle, San Jacinto, CA 92583 (the "BUNGAY LOAN").

158. In submitting the BUNGAY LOAN to FDIC/INDYMAC, IMORTGAGE breached the representations and warranties contained in the Agreement and Sections 1206.02 and 1217.01 of the Guide in that (1) the borrower's credit was misrepresented, and (2) the borrower's employment was misrepresented. The above acts entitle FDIC/INDYMAC to require IMORTGAGE to repurchase the BUNGAY LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the BUNGAY LOAN.

159. Commencing on or about December 29, 2008, FDIC/INDYMAC demanded that IMORTGAGE repurchase the BUNGAY LOAN in accordance with its obligations under the Agreement, and based on IMORTGAGE's violations of the Agreement and the Guide.

160. IMORTGAGE failed and refused to repurchase the BUNGAY LOAN and/or indemnify FDIC/INDYMAC for its losses despite FDIC/INDYMAC's demands for the same. IMORTGAGE has breached the terms of the Agreement by failing and refusing, and continuing to fail and refuse, to repurchase the BUNGAY LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the BUNGAY LOAN.

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

161. As a proximate result of IMORTGAGE's breach of contract, including, but not limited to, its failure to perform its obligations to FDIC/INDYMAC under the Agreement and the Guide to repurchase the BUNGAY LOAN and/or indemnify FDIC/INDYMAC for its losses arising from the BUNGAY LOAN, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $74,145.54, plus interest, attorneys' fees and costs.

**TWENTY-FOURTH CLAIM FOR RELIEF**

**(NEGLIGENCE AGAINST DEFENDANT IMORTGAGE)**

162. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 161, above, as if they were set forth again in full.

163. As a mortgage broker with a pecuniary interest in the transactions whereby FDIC/INDYMAC purchased the Loans, IMORTGAGE owed FDIC/INDYMAC a duty to act in accordance with the law and in accordance with custom, practices and standards of conduct of a mortgage broker professional prevailing in the mortgage industry. As part of this duty, IMORTGAGE owed FDIC/INDYMAC a duty that cannot be delegated to third parties or independent contractors. As part of this duty, IMORTGAGE owed FDIC/INDYMAC a duty to use reasonable care under the circumstances to refrain from supplying false information for the guidance of FDIC/INDYMAC in purchasing the Loans. IMORTGAGE knew that the information they were providing to FDIC/INDYMAC would be used and relied upon by FDIC/INDYMAC in deciding to fund the Loans.

164. In breach of its duty to FDIC/INDYMAC, IMORTGAGE negligently provided false information to FDIC/INDYMAC concerning the transactions, appraisals and occupancy as well as borrowers' credit, assets and employment as set forth in the First through Twenty-Third Claims for Relief above.

165. In breach of its duty to FDIC/INDYMAC, IMORTGAGE

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

negligently failed to disclose material facts to FDIC/INDYMAC as set forth above.

166. FDIC/INDYMAC relied upon IMORTGAGE to conduct its business in accordance with the duty of care implied by the law and the custom of the mortgage industry, and believed that the information submitted by IMORTGAGE was true and had been reviewed in accordance with the Agreement and the Guide and other standards prevailing in the mortgage industry.

167. FDIC/INDYMAC has been damaged because it relied upon the proper performance by IMORTGAGE of its professional duties as a mortgage broker in making the decision to fund the Loans. FDIC/INDYMAC's damages are presently believed to be in excess of $3,477,049.62 plus interest, costs and attorneys' fees.

**TWENTY-FIFTH CLAIM FOR RELIEF**

**(SPECIFIC PERFORMANCE AGAINST IMORTGAGE)**

168. FDIC/INDYMAC realleges and incorporates herein by reference paragraphs 1 through 161, above, as if they were set forth again in full.

169. The terms and provisions of the Agreement and the Guide are just and reasonable as to FDIC/INDYMAC and IMORTGAGE, and the respective obligations of FDIC/INDYMAC and IMORTGAGE thereunder are supported by fair and adequate consideration. FDIC/INDYMAC alleges this specific performance claim for relief as an alternative remedy to its claims at law, and, for the purpose of preserving its right to pursue alternative remedies, alleges that it has no adequate remedy at law.

170. FDIC/INDYMAC is entitled to a judicial decree of specific performance commanding IMORTGAGE to perform its repurchase and/or indemnity obligations under the Agreement and the Guide to indemnify FDIC/INDYMAC for its losses incurred in connection with the Loans, in an amount to be proven at the time of trial.

171. Under the Agreement, IMORTGAGE agreed to indemnify

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

FDIC/INDYMAC from and against all reasonable attorneys' fees actually incurred, and any other costs and expenses resulting from, arising out of, relating to, or in connection with (i) a breach of any representation, warranty or obligation of IMORTGAGE contained in or made pursuant to the Agreement or the Guide, or (ii) any act or omission by IMORTGAGE under the Agreement or the Guide. Therefore, FDIC/INDYMAC requests that the Court award FDIC/INDYMAC its attorneys' fees and costs in this matter as part of any award or judgment, plus prejudgment interest as allowed by law.

**WHEREFORE,** FDIC/INDYMAC prays for judgment against defendants, and each of them, as follows:

1. For general, compensatory, and consequential damages, according to proof at trial, including, without limitation, damages for defendants' failure to indemnify and reimburse FDIC/INDYMAC for its losses incurred in connection with the at issue Loans, as set forth above, which total in excess of $3,477,049.62, plus interest, costs, and attorneys' fees;

2. That the court enter a decree of specific performance commanding defendants to perform their repurchase and/or indemnification obligations under the Agreement and the Guide, and to indemnify FDIC/INDYMAC for losses incurred in connection with the Loans, as set forth above, under the terms of the Agreement and the Guide, at the sums provided for therein;

3. All damages incurred as a result of defendants' failure to perform under the Agreement and the Guide;

4. For its costs of suit incurred herein;

5. For its reasonable attorneys' fees as allowed by law;

///

///

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770

6. For prejudgment interest at the legal rate allowable; and

7. For such other and further relief as the Court deems just and proper.

DATED: January 5, 2010

SNIPPER WAINER & MARKOFF

By: ______________________
Maurice Wainer
Attorneys for Plaintiff FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for INDYMAC BANK, F.S.B.

SNIPPER WAINER & MARKOFF
270 N. CANON DRIVE
PENTHOUSE
BEVERLY HILLS, CALIFORNIA 90210
TEL. (310) 550-5770 FAX (310) 550-6770



Seller Contract and e-MITS® User Agreement

**Seller Contract and e-MITS® User Agreement:**

This Seller Contract and e-MITS® User Agreement (as amended, supplemented or otherwise modified from time to time, the "Contract") is entered into this ________ day of ____________________, 20_____, by and among INDYMAC BANK, FSB ("IndyMac"), and INDYMAC BANK, FSB DBA Construction Lending Corporation of America ("CLCA"), (collectively referred to herein as the "Company"), and imortgage.com, Inc.________, a ("Seller"). Subject to all applicable legal and regulatory requirements, Seller desires to do one or more of the following: (1) sell mortgage loans to Company, (2) service mortgage loans for Company, and/or (3) submit mortgage loans to Company for table funding, and Company desires to do one or more of the following: (1) purchase mortgage loans from Seller, (2) have Seller service mortgage loans for the Company, and/or (3) fund mortgage loans submitted by Seller to Company for table funding, in each case pursuant to the terms of this Contract, the IndyMac Seller Guide, as amended, supplemented or otherwise modified from time to time (the "Seller Guide"), and the e-MITS User Guide (the "e-MITS Guide") (the Seller Guide and the e-MITS Guide are collectively referred to as the "Guide") and any master commitments entered into between Seller and Company. Seller desires to undertake the aforementioned tasks using the IndyMac e-MITS system as more fully described herein and subject to the terms and conditions herein. All terms used and not otherwise defined herein shall have the meanings given such terms in the Guide. NOW, THEREFORE, in consideration of the premises set forth above and the terms, conditions and agreements set forth below, Company and Seller hereby agree as follows:

1. Seller's Duties. Seller shall diligently perform all duties incident to the sale, servicing and/or table funding, as applicable, of all mortgage loans which may be sold by Seller to, serviced by Seller for, and/or delivered by Seller for table-funding by Company from time to time and such other mortgage loans as Company and Seller may mutually agree upon. In the performance of such duties, Seller shall comply with all of the applicable provisions of the Guide and with all other reasonable requirements and instructions of Company. Seller shall perform all such duties at its sole expense except as otherwise expressly provided in the Guide. Seller agrees to service (if servicing is retained) each of such mortgage loans continuously beginning with the purchase date for such mortgage loans, or the date of designation of Seller as replacement servicer for mortgage loans previously purchased by Company from another Seller, until all interest and principal on each mortgage loan has been paid in full, the mortgage loan has been liquidated as provided in the Guide, or such servicing duties are terminated by Company. Seller shall create, maintain and transmit all mortgage loan papers and documents including permanent mortgage loan account records in accordance with the Guide. Seller shall promptly notify Company in writing of any activity or action, either internal or external, which could potentially affect adversely the terms of any mortgage loan serviced hereunder or the ability of Seller to service any mortgage loan for any investor, including Company.

2. Incorporation of Guide by Reference. SELLER ACKNOWLEDGES THAT IT HAS READ THE GUIDE PRIOR TO ENTERING INTO THIS CONTRACT and has the ability to sell, service and/or facilitate (as the case may be) the table funding of mortgage loans in accordance with the Guide. Seller hereby agrees to perform all of the obligations of a seller, and to comply with the terms, conditions, procedures and requirements set forth in the Guide, all of the terms and conditions of which are incorporated herein by reference and made a part of this Contract.

3. Term of Contract; Termination.

3.1 Term. The term of this Contract will commence on the date first set forth above. Each party reserves the right to terminate this Contract at any time for any reason in it sole discretion upon ninety (90) days' written notice to the other party. In addition to the foregoing, Company will have the right to terminate this Contract effective immediately upon notice to Seller in the event of any breach by Seller of this Contract, the Guide or any other agreement between Company and Seller related to the System or Seller's relationship with Company.

3.2 Obligations of Seller upon Termination. Upon termination of this Contract, Seller shall (i) cease using the System and Software (as defined in Paragraph 4.1, below) immediately, and (ii) deliver to Company or (if so directed by Company) destroy any copies of the Software in Seller's possession and any other materials provided by Company to Seller pursuant hereto in its possession or under its control (including the Guide). If Company shall so direct, Seller

 Downloaded indymacb2b.com 

EXHIBIT A 40





Seller Contract and e-MITS® User Agreement
Raise your expectations.

shall furnish to Company an affidavit signed by an officer of Seller certifying that, to the best of his or her knowledge, the delivery or destruction referenced in (ii) and (iii) above have been fully effected. The parties' rights and obligations under Sections 1, 2, 3.2, 4.2, 5 through 12, inclusive, 15, and 16 shall survive any termination of any license or rights under this Contract.

4. Use of IndyMac e-MITS®

4.1 System and Software. Subject to the terms and conditions of this Contract, IndyMac grants to Seller the non-exclusive, non-assignable right to use, during the term of this Contract (i) the electronic mortgage information transaction system owned by IndyMac and known as IndyMac e-MITS (the "System"), and (ii) the System software, any updates and enhancements of such software which are made available by Company to Seller, and all code and controls contained in the Web Site, as well as any subsequent code which may be written in any programming language (collectively, the "Software"), without change, along with any reports or other printouts generated by the Software in the course of its normal operation ("Output"), any documentation related to the Software, and any copies of the foregoing which Seller is permitted to make pursuant to the terms of this Contract and the Guide. Seller may only access the System using the Software via the internet through the e-MITS Web Site (the "Web Site"), and will cause to be entered into the System only data regarding existing mortgage loans sold to Company, potential mortgage loans for which an application or an inquiry has been made to Seller by a potential borrower, and mortgage loans presented to Seller by a third party originator ("TPO"), subject to any limitations set forth in Guide. Seller's use of the System is subject to all provisions of this Contract and all instructions as may be communicated by Company from time to time in writing, including, without limitation, restrictions on the use of the System. Seller shall not: (a) decompile, disassemble, reverse engineer, or otherwise determine or attempt to determine source code for the executable code of the Software or any information, products or services obtained from the Web Site (collectively, the "Products"), (b) rent, lease, transfer, sell, publish, license, distribute or otherwise transfer any rights to the Products, except to the extent permitted under Section 11; (c) modify, translate, enhance, maintain, or create derivative works based on the Products; (d) except to the extent necessary to use the System for the sole purpose set forth in this Section 4.1, modify, copy, distribute, transmit, display, perform or reproduce the Products; (e) except to the extent otherwise provided in this Contract or consented to by Company in writing, permit any third parties to use the System, either directly or through Seller; (f) use the System for any purpose other than the purpose for which IndyMac has developed the System; or (g) copy, download, or otherwise access the System software except as such operations are performed by the Software in the course of its normal operation.

4.2 System Ownership. Seller acknowledges that it has no ownership or other interest or license in the System or Software, except to the extent of the rights expressly granted herein. Title, ownership rights, and intellectual property rights (including all applicable rights to copyrights, trade secrets, patents, and trademarks) in and to the System and Software and any modifications or enhancements made to the System or Software belong to and will remain with IndyMac.

4.3 Procedures for Seller's Use. Seller hereby agrees that the Web Site shall be used by Seller's authorized employees only. Company shall provide Seller access to the System as set forth in Section 1000 of the e-MITS Guide. Seller shall be solely responsible for (i) preventing unauthorized use of the identification numbers and passwords, (ii) unauthorized use of the System in connection with Seller's identification numbers and passwords, and (iii) controlling access to the System and implementing effective security measures. Company shall have no liability with respect to any such unauthorized use. Seller shall list Seller's authorized users as set forth in Section 1000 of the e-MITS Guide, and ensure that each individual identification number and password is used only by the person identified in the System. Seller will permit Company to audit or review Seller's controls and procedures relating to the access and security of the System.

4.4 Seller's Obligation to Review System Input Daily. Seller acknowledges and agrees that it will be solely responsible for reviewing on a daily basis the data it inputs into the System and for disputing inaccurate or erroneous data, and the actions Company takes based upon such inaccurate or erroneous data, within one business day of the date on which such data was input into the System by Seller. Seller agrees that Company will have no liability whatsoever arising out of or related to inaccurate or erroneous data which is not disputed within the time period set forth above.

Downloaded from docmach2b.com



4.5 Seller's Obligation to Submit Loans Through the System. Seller acknowledges and agrees that Seller must submit all mortgage loans to Company through the System to the extent the System supports the applicable loan program and/or product. The loan programs and/or products supported by the System may be expanded or reduced from time to time and IndyMac will notify Seller of the new loan programs and/or products supported by the System as they change. All rate locks shall have the same force and effect as a rate lock received by IndyMac's Rate Lock Desk via telephone or facsimile in accordance with the applicable terms set forth in this Contract and the Guide. Seller's Master Commitment price breaks will not apply to rate locks issued through the System. Seller acknowledges that all rate locks are subject to changes if, upon review of the Data (as defined below), Company determines, in its sole and absolute discretion, that the Data is incomplete or is not supported by the loan documents, or any other documents that Company receives from Seller or otherwise obtains in connection with the Data verification process.

4.6 Fees. Seller will not be assessed a fee for the use of the System; provided, however, that Company, in its sole and absolute discretion, reserves the right to charge a fee for use of the System at a future date. In the event that Company commences charging a fee for use of the System, Company shall provide Seller thirty (30) days' prior written notice of such fee. Seller shall have the right to terminate this Contract upon receipt of Company's notice regarding the charging of such fee.

5. Warranties, Representations and Obligation. Seller reaffirms that the representations and warranties stated in the Guide are true and correct and agrees to undertake all of the obligations stated in the Guide upon the execution of this Contract and upon the sale of each mortgage loan to Company on behalf of Company, serviced by Seller and/or table-funded by Company (as the case may be), unless expressly waived in writing by Company. All representations and warranties made, and obligations undertaken, by Seller shall survive (i) any investigation made by or on behalf of Company, its assignees or designees, (ii) any liquidation of the mortgage loans, (iii) any purchase or funding of the mortgage loans by Company, its assignees or designees, (iv) the subsequent transfer of the mortgage loans and/or the servicing rights incident to the mortgage loans to any third party, (v) any suspension or termination of Seller's privileges under this Contract, and (vi) the bankruptcy or insolvency of either party, and all such representations and warranties shall inure to the benefit of Company, its assignees or designees, and any transferee of any mortgage loan. Upon specific written request from Company, Seller shall supply evidence that is satisfactory to Company of its compliance with any provision of this Contract and the Guide.

6. Confidentiality.

6.1 Seller to Maintain Confidentiality; Breach. Seller reaffirms and acknowledges Seller's obligations to maintain the confidentiality of the Confidential Information and Derivative Information, each as defined in the Guide, under the terms and provisions set forth in the Guide. Seller and Company agree that the confidentiality conditions contained in the Guide and this Contract are material terms of this Contract and the Guide, and that any disclosure of any Confidential Information or Derivative Information by Seller or any other person bound by these confidentiality conditions shall constitute a breach by Seller of this Contract and the Guide.

6.2 Remedies. Seller expressly acknowledges that monetary damages alone will not be an adequate remedy for any breach by Seller of the confidentiality provisions contained in the Seller Guide, this Contract, the e-MITS® Guide and otherwise, and Seller further acknowledges that the injury to Company due to such breach will outweigh any injury Seller will suffer due to its inability to continue the breaching conduct. Consequently, in addition to any other remedies which Company may have, Company shall be entitled as a matter of right to immediate injunctive relief, in any court of competent jurisdiction, with respect to any actual or threatened breach by Seller of the confidentiality provisions contained in the Seller Guide, this Contract, the e-MITS® Guide or otherwise.

6.3 Unauthorized Copying Prohibited. Except to the extent necessary to perform its servicing obligation or other obligations to Company, Seller shall not copy or permit copies to be made of the Confidential Information, Derivative Information, or any portion thereof, without the prior written consent of Company, which consent may be granted or denied in Company's sole and absolute discretion. Seller shall return or turn over to Company any Confidential Information, Derivative Information and copies thereof, including without limitation, hard copies and word



processing and other computer files, within three (3) business days of Seller's receipt of written demand by Company or immediately upon termination of Seller's eligibility, whichever is earlier.

7. Data. Seller agrees that Company will have the right to use and disclose the data entered by Seller onto the System and any other data obtained by Company as provided in Section 1050 of the Seller Guide (collectively, the "Data").

8. Repurchase Obligations. Seller shall promptly effectuate any repurchase of a mortgage loan required by Company in accordance with the terms and conditions of the Guide.

9. Seller's Status as Independent Contractor. At no time shall Seller represent that it is acting as an agent, partner or joint venturer of Company. Seller shall, at all times, act as an independent contracting party.

10. Provisions Concerning TPOs. Company agrees that Seller may use the Software to input into the System data regarding mortgage loans presented to Seller by TPOs, subject to each of the terms and provisions set forth in Section 3000 of the e-MITS User Guide.

11. Assignment. This Contract, the Guide, the Software, any rights Seller has to use the System and any related master commitments may not be assigned or transferred (whether voluntarily, involuntarily, by merger, by operation of law or otherwise), in whole or in part, by Seller without the prior written consent of Company. Company may sell, assign, pledge or in any other way transfer, in whole or in part, its rights and obligations under this Contract, the Guide and any related master commitment to any of Company's affiliates without notice to or the consent of Seller. Any other transfer by Company is permitted and effective upon written notice by Company to Seller.

12. Amendments. This Contract may not be amended or modified orally, and no provision of this Contract may be waived or amended, except in writing signed by the party against whom enforcement is sought. Such a written waiver or amendment must expressly reference this Contract. However, by its terms the Guide may be amended or supplemented by Company from time to time. Seller agrees to comply with any such amendment(s) to the Guide, effective upon the later of (a) receipt of written notice of such amendment(s), or (b) the effective date specified therein.

13. Notices. All notices, requests, demands or other communications that are to be given under this Contract shall be in writing, addressed to the appropriate parties and either sent by certified mail, return receipt requested, postage prepaid, to the addresses below, or by facsimile to the facsimile numbers below. Any such notice, request, demand or other communications shall be deemed effective upon receipt.
If to Company, notice must be sent to the appropriate address or facsimile number specified in the Guide.
If to Seller, notice must be sent to:

imortgage.com, Inc.
4800 N. Scottsdale Road
Suite 3800
Scottsdale, AZ 85251

14. Warranties; Limitation of Liability.

14.1 No Warranty. Company makes no representation or warranty with respect to the System or the Software (except to the extent expressly provided otherwise in Section 5 of this Contract). In addition, Company makes no representation or warranty with respect to any of the data obtained, provided or transmitted by or through the System. EXCEPT TO THE EXTENT EXPRESSLY PROVIDED OTHERWISE IN THIS AGREEMENT, THE SYSTEM, THE SOFTWARE AND ALL DATA ARE BEING PROVIDED TO USER "AS IS" AND ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED (EITHER IN FACT OR BY OPERATION OF LAW), ARE EXPRESSLY EXCLUDED, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF ACCURACY, NON-INFRINGEMENT, AND THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. Seller shall be solely responsible for, and Seller acknowledges that Company shall have no obligation to assist Seller in, (i) setting up the Software on its computer system, (ii) accessing the System via the Web Site or otherwise, and (ii) maintaining connectivity to the System in accordance with instructions provided by Company from time to time. Seller agrees that, notwithstanding any telephone assis-

 Downloaded [illegible]



tance provided by Company under Section 5030 of the e-MITS® Guide, Company will have no liability whatsoever arising out of or related to Seller's set-up of the Software, Seller's access to the System or any such telephone assistance. Seller also acknowledges that Seller's access to the System via the Web Site will be through a third party internet service provider ("ISP"), and that Company will have no liability whatsoever arising out of or related to any service provided to Seller by an ISP.

14.2 Liability Limitation. Company will have no liability under this Contract, or related in any respect to the System or Software (including, without limitation, under any other agreement with Seller related to the System) for special, consequential, exemplary, indirect or incidental damages, or for any lost revenues, lost profits or lost data, even if it has been advised of the possibility of such damages. In no event shall Company's total liability to Seller, whether arising out of tort, contract, or other legal theory, exceed $10,000.

15. Indemnification by Seller. Seller shall promptly indemnify, defend and hold Company from and against all losses, claims, demands, actions or causes of action, liabilities, damages, penalties, fines, forfeitures, judgments, legal fees, including reasonable attorneys' fees actually incurred, and any other costs and expenses heretofore or hereafter resulting from, arising out of, relating to, or in connection with (i) a breach of any representation, warranty or obligation of Seller contained in or made pursuant to this Contract or the Guide, or (ii) any act or omission by Seller under this Contract or the Guide, or (iii) any claim, demand, defense or assertion against or involving Company, including without limitation, from Company's assignee or transferee, with respect to any mortgage loan, based on or grounded upon, or resulting from any such breach by Seller or a breach of any representation, warranty or obligation made by Company in reliance upon any representation, warranty or obligation made or undertaken by Seller contained in or pursuant to this Contract or the Guide, or (iv) any claims based upon Seller's use of the System or Software, including without limitation, claims arising out of Seller's input into the System of inaccurate or erroneous data and any actions taken by Company or Seller based on such data, or (v) Seller's failure to comply with applicable laws and regulations, or (vi) unauthorized use of any identification numbers or passwords with respect to the System, or (vii) actions of TPOs associated with Seller, or (viii) disclosure by Seller or a TPO associated with Seller of the Confidential Information or Derivative Information to a third party, or (ix) actions of TPOs associated with Seller. Seller will not be liable for early payment defaults on prime and subprime loans, provided, however, that Company, may in its sole and absolute discretion, elect to enforce the early payment default provisions for prime or subprime loan contained in the Guide at a future date upon ten days' written notice to Seller. The obligations of Seller under this paragraph shall survive delivery and payment for the mortgage loans and termination of this Contract or the expiration hereof. Attorneys' fees and disbursements incurred in enforcing, or on appeal from, a judgment pursuant hereto shall be recoverable separately from and in addition to any other amount included in such judgment, and this clause is intended to be severable from the other provisions of this Contract and to survive and not be merged into such judgment.

16. Exclusive Agreement. This Contract, including all documents incorporated by reference herein, constitutes the entire understanding between the parties hereto and supersedes all other agreements, covenants, representations, warranties, understandings and communications between the parties, whether written or oral, with respect to the transactions contemplated by this Contract.

17. Headings. All section headings contained herein are for convenience only and shall not be construed as part of this Contract.

18. Enforceability. Any provision of this Contract that is prohibited or unenforceable in any jurisdiction shall as to such jurisdiction be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction, and to this end, the provisions hereof are severable. In the event any of the terms or provisions contained in this Contract conflict with those contained in the Guide, the terms and provisions of this Contract shall govern.

19. Governing Law; Waiver of Jury Trial. This Contract shall be governed by, and construed and enforced in accordance with, applicable federal laws and the laws of the State of California, without reference to conflict of laws principles, and the Seller hereby agrees that any court action arising out of this Contract shall be brought in any court of competent jurisdiction within the State of California, County of Los Angeles. SELLER VOLUNTARILY AND KNOWINGLY

 Downloaded from pdfsearch.com



WAIVES ANY RIGHT IT HAS TO A JURY TRIAL PURSUANT TO ANY COURT ACTION BROUGHT BY ANY PARTY TO THIS CONTRACT.

20. Counterparts. This Contract may be executed in one or more counterparts, each of which shall constitute an original and all of which shall constitute the same Contract.
IN WITNESS WHEREOF, the duly authorized officers of Seller and Company have executed this Contract as of the date first above written.

ATTEST:

(CORPORATE SEAL. If none, so state.)

We do not have a corporate seal.

"Seller":

imortgage.com, Inc.
Name of Seller

By: [signature]
Signature of Authorized Signor

Name: Dean Bloxom
(Please type or print)

Title: President

"Company":

INDYMAC BANK, FSB

By: [signature]

Name:

Title:

3/6/03

INDYMAC BANK, FSB DBA
Construction Lending Corporation of America

By:

Name:

Title:

Downloaded indymacb2b.com

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dale S. Fischer and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

**CV10- 114 DSF (MANx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[ ] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:

Maurice Wainer (SB#121678)
SNIPPER, WAINER & MARKOFF
270 N. Canon Drive, Penthouse
Beverly Hills, CA 90210

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for INDYMAC BANK, F.S.B. PLAINTIFF(S) | CASE NUMBER CV10 0114 DSF (MANx) |
| v. | |
| IMORTGAGE.COM, INC., a Delaware corporation DEFENDANT(S). | **SUMMONS** |

TO: DEFENDANT(S): IMORTGAGE.COM, INC., a Delaware corporation

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you ~~must serve on the plaintiff an answer to the attached ☑ complaint ☐ ____________ amended complaint~~ ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Maurice Wainer, whose address is 270 N. Canon Drive, Penthouse, Beverly Hills, CA 90210. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: JAN - 7 2010

By: CHRISTOPHER POWERS
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Indymac Bank, F.S.B.

**DEFENDANTS**

IMORTGAGE.COM, INC., a Delaware corporation

(b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): Los Angeles

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):

(c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Maurice Wainer (SB#121678)
SNIPPER, WAINER & MARKOFF
270 N. Canon Drive, Penthouse
Beverly Hills, CA 90210
(310) 550-5770

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No

☑ **MONEY DEMANDED IN COMPLAINT:** $ 3,477,049.62

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
12 U.S.C. §1819 (b)(2)(A). 12 USC §1464(d)(2)(A). 12 USC §1821(c)(5). 12 USC §1331.

**VII. NATURE OF SUIT** (Place an X in one box only.)

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☑ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities /Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**TORTS PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/ Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE / PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☐ No ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:** Case Number: CV10 0114

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑ No ☐ Yes

If yes, list case number(s): ____________

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)
☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides (Use an additional sheet if necessary)
☑ Check here if the U.S. government, its agencies or employees is a named plaintiff.

List the California County, or State if other than California, in which **EACH** named defendant resides. (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.

ARIZONA.

List the California County, or State if other than California, in which **EACH** claim arose. (Use an additional sheet if necessary)
**Note:** In land condemnation cases, use the location of the tract of land involved.

LOS ANGELES.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** ____________ **Date** 1/6/10

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |